SAMUEL J. DICKINSON v. THE PORT HURON & NORTH-WESTERN RAILWAY COMPANY.

*Railway negligence—Structures alongside the track.*

1. It is negligence in a railroad company to allow coal bins so close to its track that persons upon an excursion car cannot safely stand, while passing them, upon the running board that stretches along the side of such a car.

2. A passenger on an excursion train was allowed to leave one car and go into another to sell tickets. He had left his wife on the first car, which was an open one, the seats being reached from an outside running board instead of an inside aisle. The running board was used by the conductor and trainmen in passing from point to point. *Held* that it was not necessarily negligent for the passenger to suppose that he also could use it safely, and try to do so in returning to the car where his wife was. And supposing it to be safe, as it should be, it was not negligent to omit to look out for structures so close alongside the track as to endanger persons who had to be on the running board while passing them.

Error to Saginaw.   (Gage, J.)   Jan. 25.—March 6.

CASE.   Defendant brings error.   Affirmed.

*Wisner & Draper*, for appellant, cited *Todd v. Old Colony &c., R. R.* 3 Allen 18; *L. S. & M. S. Ry. v. Miller* 25 Mich. 274; *Downey v. Hendrie* 46 Mich. 498; *Kelly v. Hendrie* 26 Mich. 255; *Mich. Cent. R. R. v. Coleman* 28 Mich. 440; *Phillips v. R. & S. R. R. Co.* 49 N. Y. 179.

*Edget & Brooks* for appellee.   A railroad company that has running boards on the sides of its cars is bound to guard against any accident that might be reasonably anticipated in view of their use: Cooley on Torts 672; *Cleveland v. Steamboat Co.* 68 N. Y. 306; a passenger has a right to assume that coal bins would not have been built so near the tracks as to injure any one on the running board: 2 Thomp. Neg. 1173; *Harpell v. Curtis* 1 E. D. Smith 78; *Brown v. Lynn* 31 Penn. St. 510.

COOLEY, C. J.   This suit is brought to recover damages for a personal injury sustained by the plaintiff while being carried on the cars of defendant as a passenger.

The injury was received August 9, 1883. On that day, by arrangement with defendant, an organization at East Saginaw, known as the "Ladies' Christian Temperance Union," gave an excursion from East Saginaw to Port Huron and back. Tickets for the excursion were placed in the hands of a committee of ladies, and they sold them for one dollar and fifty cents each, and accounted to the defendant for one dollar each. On the morning of the day named plaintiff and his wife took the cars with the excursion party. The train

was the regular passenger train of closed cars, with two open excursion or observation cars attached. These last were constructed with seats running across the cars, and without any aisle from end to end. Along one side was a step or running board about nine inches in width, upon which passengers stepped in entering and leaving the car, and along which the conductor walked in taking up tickets. There were iron rails by each seat for one to hold by who was upon this step. The seat which the plaintiff and his wife took was upon the first of these open cars. The closed cars were before it.

After the plaintiff had taken his seat, he got off again at the request of the ladies to sell tickets for them. As the train was about to start, several persons came to take the cars who were without tickets, and the conductor told the plaintiff to let them get aboard the train and sell them tickets afterwards. They went into one of the closed cars, and plaintiff followed them and sold tickets to them. While he was doing this the train started. The plaintiff then left the car where they were, and from its rear platform passed to the front platform of the car on which he had left his wife, and then along the side step towards the rear of the car. The train was then moving with considerable speed. As the plaintiff passed from seat to seat, he inquired of the passengers if they had tickets. A brakeman was then passing along and closing blinds on the side of the car for the protection of passengers. These blinds, when closed, came up to the shoulders of the seated passengers. The brakeman passed the plaintiff by swinging around him when he was near the middle of the car, and as he did so, said to him, "You want to look out a little for the switch." Very soon the plaintiff, as he was moving, heard the brakeman halloo and motion with his hand towards the car. The plaintiff says: "I took him for my guide and saw the bins, and I knew there was no time to fool away, and I drew myself up to the car as he was doing, taking him for my guide, and then he threw one hand back, and I had got to get back and jump myself, and I made a lunge and grabbed the last iron, and drew my head and shoulders around the end,

and the bin struck my thigh and smashed me through there some sixty feet."

The bins referred to, and against which the plaintiff struck, were coal bins extending along the side of the track some sixty-five feet, and coming within eleven and a half inches of the side of a car standing on the track, and within two inches of the step upon which plaintiff stood. The height of the bins was five feet. Plaintiff's leg was broken by the concussion. It was shown that the bins might have been seen from the approaching cars for a distance of twelve hundred feet. When plaintiff left the closed car on which he had been selling tickets, there were unoccupied seats in it which he might have taken had he been so disposed.

In the trial court it was urged on the part of the defense that the facts in proof made out no case for the plaintiff — *first*, because they showed no breach of any duty which the defendant owed to the plaintiff; and *second*, because the injury was brought upon the plaintiff by his own negligence. On the first point the trial judge ruled against the defense, and on the second, he submitted the facts to the jury, who found for the plaintiff.

We agree with the trial judge that it was negligence in the defendant to permit bins of the kind described to stand so near its track when it was making use of the open cars for the conveyance of passengers. It is true that passengers are expected to take and keep their seats in the car: it is not expected that they will stand upon the step or running board when the cars are in motion : this step or board is provided for the use of the servants of the company, and it will not be expected that passengers will make use of it for passing back and forth while the cars are moving, unless under very exceptional circumstances. But this means of passage takes the place of the aisle in the common passenger coach ; and as it is always possible that there may be lawful and proper occasions for passing from car to car, it is not excusable in the defendant that it should permit structures to stand so near its track as to render the use of the running board dangerous to life or limb. The servants of the company must

make frequent use of this passage-way between stations, and they have a right to reasonable security against injury in doing so.   And while we think the passengers are not at liberty to pass from car to car at will, and that they should keep their seats when the train is in motion, yet in view of exceptional cases which may well arise, and in which the passenger would be likely to consider it proper to make use of the step or running board as this plaintiff did, we are entirely of the opinion of the circuit judge that the defendant owed a duty to its passengers to make such use by them, on occasions justifying it, reasonably safe.

We also agree that the facts did not make out a conclusive case of negligence against the plaintiff.  The principal circumstance urged against him is that being in the closed car where there were empty seats when the train started, he did not take a seat there until the next station was reached.   But the plaintiff had been permitted to enter that car for the purpose of selling tickets, after he had taken a seat elsewhere with his wife, and on an understanding that the cars were to be immediately started; and he would naturally suppose that he was at liberty, when he had completed the business he went forward on, to return to his own seat.   And, unless he knew it was dangerous to walk upon the running board, it would not have been likely to occur to him that there were objections to his doing so.   This passage-way seemed to be safe.   The step was wide- enough for the feet, and, with the irons to take hold of in moving along, there was no appearance of danger if care was used; and so long as the servants of the company were using the passage-way frequently, and were required to do so in the regular performance of their duties, it would have appeared like excessive timidity if the plaintiff had refrained from passing back to his seat because of anticipated danger.

But it is also said that the plaintiff would have seen the bins had he looked ahead for them, and that he was negligent in not doing so.   But he was not negligent in failing to look ahead, unless he had reason to anticipate some such danger ; and if we are correct in what we have already said,

he had no such reason. He had a right to assume that the defendant would perform its duty in guarding the safety of its passengers and servants; and it was only because it had failed to do so in this instance that the danger was encountered. The plaintiff had had no warning, except to look out a little for the switch, until the bins were so near that it was impossible to avoid striking them; and why should he have looked for dangers whose existence he could not have anticipated? It is not claimed that the caution in respect to the switch was a caution against striking against it; more likely it referred to a jolting motion in passing it.

The cases of *Hickey v. Boston &c. R. R. Co.* 14 Allen 429, and *Camden &c. R. R. Co. v. Hoosey* 99 Penn. St. 492: s. c. 44 Am. Rep. 120, upon which the defendant has greatly relied, we do not think are necessarily inconsistent with these views.

We decide this case upon its peculiar facts, and we are of opinion that the facts presented a case for the jury. We also think that the instructions given to the jury were unexceptionable.

The judgment will therefore be affirmed.

The other Justices concurred.