### INDIANA UNION TRACTION COMPANY *v.* KEITER.

[No. 21,488.    Filed November 17, 1910.    Rehearing denied February 23, 1911.]

1. APPEAL.—*Weighing Evidence.—Want of Evidence.*—The Supreme Court will not weigh conflicting evidence, and in determining whether there is evidence supporting the verdict, only that most favorable to the prevailing party will be considered.   p. 274.

2. CARRIERS.—*Passengers.—Stopping Car at Destination.—Presumptions.*—Where a passenger paid his fare to his destination and told the conductor that he desired to get off the car at such place, he had a right to assume that the car would be properly stopped at such place so that he could alight in safety.   p. 275.

3. CARRIERS.—*Railroads.—Care Required toward Passengers.*—Railroad companies are not insurers of the safety of their passengers, but they are required to use the highest degree of care consistent with the conduct of their business, and such care must continue until such passengers have alighted.   p. 275.

4. CARRIERS.—*Passengers.—Alighting.—Contributory Negligence.—Jury.*—There being no prescribed method for passengers to alight from a car, the question of the contributory negligence of a passenger in alighting therefrom, is ordinarily for the jury.   p. 276.

5. CARRIERS.—*Interurban Railroads.—Passengers.—Alighting.—Contributory Negligence.*—A passenger on an interurban car is not guilty of contributory negligence as a matter of law because,

Indiana Union Traction Co. *v.* Keiter—175 Ind. 268.

as the car approached his station, he arose from his seat, went upon the rear platform and took a position on the steps of the car preparatory to alighting.  p. 276.

6.  NEGLIGENCE.—*Contributory.*—*Burden of Proof.*—*Jury.*—*Inferences.*—The burden of proving contributory negligence is upon the defendant; and it is the province of the jury to draw inferences from the facts proved.  p. 277.

7.  CARRIERS.— *Passengers.*— *Injuries.*— *Instructions.*— *Proximate Cause.*—The refusal of an instruction that by the term " 'proximate cause' of an injury is meant the inducing cause, or the act or acts which set in motion the chain of circumstances operating in continuous and uninterrupted sequence which produced the injury complained of," is not prejudicial, where an instruction was given that the "proximate cause is the cause not necessarily the closest in point of time to the injury of the person, but it is the cause which sets in motion the things which cause the injury."  p. 277.

8.  CARRIERS.—*Injuries to Passengers.*—*Instructions.*—*Proving Complaint.*—*Contributory Negligence.*—An instruction, in a personal injury case, that the burden is upon the plaintiff to "prove the material allegations of his complaint by a fair preponderance of the evidence, and if he has done so the finding should be for the plaintiff, and if he has not done so, the finding should be for the defendant," is not misleading on the ground that the plaintiff might recover thereunder regardless of contributory negligence, where the jury was informed by other instructions that contributory negligence was fatal to plaintiff's right of recovery.  p. 278.

From Superior Court of Marion County (71,986);  *Pliny W. Bartholomew,* Judge.

Action by Harry T. Keiter against the Indiana Union Traction Company.  From a judgment for plaintiff, defendant appeals.  *Affirmed.*

*James A. VanOsdol, Kane & Kane, L. B. Ewbank* and *Joseph R. Morgan,* for appellant.

*Harding & Hovey, George T. Pattison, Solon A. Enloe* and *O. U. Newman,* for appellee.

JORDAN, J.—Appellee instituted this action upon a complaint consisting of one paragraph, to recover damages for personal injuries sustained by him, while a passenger on appellant's traction railway, on account of certain alleged negligence on

the part of appellant company. The answer was a general denial. There was a trial by jury, and a verdict in favor of appellee, awarding him $6,625 as damages. Appellant moved for a new trial, assigning various reasons in support of its motion. The motion was overruled and a judgment was rendered on the verdict. From this judgment appellant has appealed, and assigns as error the overruling of its motion for a new trial. The complaint alleges that defendant is a corporation duly organized under the laws of the State of Indiana; that on December 15, 1905, it controlled a certain line of interurban railway running into and between the cities of Logansport and Kokomo, in said State, and through intermediate points, including Galveston, Cass county, Indiana, and Jewel, Howard county, Indiana; that defendant's business was to carry freight and passengers for hire; that its power was applied through overhead wires and by what is known as the "trolley system;" that on said December 15 the plaintiff, at said town of Galveston, became a passenger on one of the defendant's cars, to be carried to the town of Jewel; that as said passenger he paid the ordinary fare charged by defendant for the regular passage between said stations of Galveston and Jewel; that while he was on said car he informed defendant, through its conductor in charge thereof, that he desired to get off at Jewel; that the usual custom of defendant since commencing to operate its railway had been to make a very short stop at said station, and that by said custom passengers were required to be in readiness to alight quickly from its cars at said station; that in compliance with said custom and requirement, plaintiff, having previously notified the conductor in charge of defendant's car that he desired to leave the car at said station, stepped out on the rear platform of the car as it approached said station; that it was then late in the night, and defendant, through its conductor in charge of the car, carelessly and negligently failed to signal the motorman who was operating the car to stop at said station, and defendant carelessly and

negligently ran said car rapidly past said station at which plaintiff intended to alight; that while plaintiff was on the platform of the car, and after it had passed said station, the usual signal was given the motorman to stop the car, and that thereupon defendant, through its motorman, carelessly and negligently reversed the power applied to running said car, and carelessly and negligently applied the brakes attached thereto for stopping the car, and suddenly checked the speed of, and stopped said car, and by reason of said careless and negligent acts on the part of said defendant, through its said motorman and conductor, plaintiff was thrown from said car and precipitated against one of said defendant's trolley-poles standing near the track, whereby and by reason of which he was badly bruised and injured in this, to wit, his skull was fractured. Damages in the sum of $10,000 are demanded.

The reasons relied on by appellant for reversal of the judgment below, as advanced in its brief, are the following: (1) The evidence fails to show that any negligence of appellant was the proximate cause of appellee's injury. (2) The undisputed evidence discloses that appellant was guilty of contributory negligence. (3) The court erred in giving to the jury, on its own motion, instruction six. (4) The court erred in giving, on its own motion, instruction seven, defining the meaning of " proximate cause." (5) The court erred in refusing, over appellant's request, to give instruction two. (6) The court erred in giving, on its own motion, instruction three. (7) The court erred in giving to the jury, on its own motion, instruction nine. (8) The court erred in giving instruction one, as requested by appellee. (9) The court erred in giving instruction two, as requested by appellee.

The theory of the complaint and the theory upon which the case was tried below appears to be that the injury sustained by appellee was caused by the negligence of appellant's motorman in applying the brakes to the car in question, thereby suddenly checking its speed and suddenly stopping

it after appellee had been carried beyond the station at Jewel, his place of destination. It will be noted, on examination of the complaint, that the negligence complained of is not imputed to the speed of the car, but to the sudden stopping thereof.

We find that there is evidence to establish the following facts: Appellant is a common carrier of freight and passengers for hire over the traction railway which it operates and controls. Its railroad extends from the city of Logansport, Cass county, Indiana, to the city of Tipton, in said State, passing through the villages of Galveston, Cass county, and Jewel, Howard county, both of which are stations upon appellant's railway. On December 15, 1905, at about 12 o'clock at night, at said village of Galveston, appellee, together with Myron W. Gates, boarded one of appellant's cars which it ran over its railway. This car was in charge of a conductor and a motorman. Appellee and Gates went into the car and took seats near the front of the passenger compartment, and each of them paid to the conductor, when he came around to collect the fares, the sum of ten cents, which was the regular fare from Galveston to Jewel. Each notified the conductor that he desired to get off the car at Jewel. After taking his seat, it appears that Gates got up from where he was sitting by the side of appellee and went into the smoking compartment of the car. The distance between Galveston and Jewel is about five miles When about one-eighth of a mile from Jewel, Gates came from the "smoker" into the compartment in which appellee was sitting, tapped him on the shoulder and said: "We're pretty near there." Gates then went onto the rear platform of the car and was followed by appellee. When they reached the rear platform, the car was about four hundred feet from the Jewel crossing, and began to slow down when very near the crossing. Gates testified that he saw the car was going to pass the Jewel stop and he gave the stop signal—one tap of the bell. Appellee was coming through the door onto the rear plat-

form when he gave this signal. The car began to slow down, and as it did so appellee stepped down one step from the platform, and took hold of the rods on each side of the car. He stood with his right foot on the first step down from the platform and his left foot was on such platform, his face was towards the vestibule, and he was preparing to alight from the car when it should stop at Jewel. He did not intend to get off the car until it should stop at said station. After appellee had taken this position in getting ready to alight from the car at the station, the speed of the car was very suddenly checked, and it "bounced and jerked," because the brakes were applied in such a sudden manner. After appellee had taken the position in question he did not have time to get back on the platform before the accident. In fact, there is evidence to show that the motorman applied the brakes in such a manner as caused the car to give sudden jerks and to bounce, and that by reason of its sudden jerking and bouncing appellee's hold on the rods was broken, and he was suddenly and violently thrown off the car against one of the trolley-poles, and thereby was very seriously injured, as alleged in the complaint. After he was thrown off the car it ran a distance equal to that which intervened between two or three trolley-poles before it came to a full stop. Appellee was thrown against the third trolley-pole standing beyond the crossing at Jewel. These trolley-poles are about one hundred feet apart. The conductor in charge was sitting in the car when Gates and appellee got up and went to the rear platform for the purpose of alighting when the car should stop at Jewel. They passed the conductor, but he said nothing to them, and gave no signal whatever to the motorman to stop the car at said station. The conductor had notice that appellee and his companion were going to the rear of the car for the purpose of alighting when it should stop at the station of Jewel. The car was a local one, and stopped at Jewel only on a signal from the conductor.

There is evidence to show that the car, before it reached Jewel, was running at an ordinary rate of speed. In respect to its speed at this time, the evidence is conflicting. It was at the Jewel crossing where the car gave the first jerk, which, as the witness testified, appeared to be caused by a sudden application of the brakes. At the time appellee's hold on the rods was broken by the jerking and bouncing of the car, he was holding on tightly to said rods, and had no intention of jumping off said car. The only purpose he had in placing himself in the position he was in was to be in readiness to alight from the car when it should stop. When appellee went to the rear platform of the car it was just a few hundred feet from the Jewel crossing. He was making no attempt whatever to get off the car before it should stop at the station. He was merely placing himself in readiness to alight quickly from the car.

At the time of the accident he was twenty-one years old and was a robust young man.

It is not our province to weigh the evidence in a case, and in considering it in this case only that most favorable to appellee, the prevailing party in the lower

1. court, has been considered. In the case of Diamond Block Coal Co. v. Cuthbertson (1906), 166 Ind. 290, we said: "In order to authorize us on an appeal to disturb the judgment of the trial court on the evidence alone, it must appear that the evidence in the case is such as to raise or present for our decision not merely a question of fact, but one purely of law on some material issue, and that such question of law under the judgment of the trial court was decided erroneously. * * * The fact that the evidence in the case on some particular and material issue appears to be weak or unsatisfactory is not alone sufficient to warrant this court in disturbing the judgment."

Counsel for appellant do not seriously controvert the question that there is evidence to establish the negligence

alleged in the complaint, but they advance the argument that the negligence of appellant company is not shown to have been the proximate cause of the injury sustained by appellee, and that, under the evidence, it appears, as a matter of law, that he was guilty of contributory negligence.

The evidence discloses that the relation of carrier and passenger existed between appellant and appellee. He paid the regular fare exacted by the company for his passage on the car between the stations of Galveston and Jewel. At the time he paid his fare he informed appellant's agent, the conductor in charge of the car, that the place of his destination was Jewel, and that he desired to leave the car at said station. Thereafter during his passage he was justified in assuming that appellant would discharge the duty it owed to him as a passenger and that his request would be complied with, or, in other words, that the car would be stopped at the point of his destination without his giving any further notice to the conductor, and that the company would exercise due care in stopping it at Jewel. *Terre Haute, etc., R. Co.* v. *Buck* (1884), 96 Ind. 346, 49 Am. Rep. 168; *Louisville, etc., R. Co.* v. *Cook* (1895), 12 Ind. App. 109; *Citizens St. R. Co.* v. *Hoffbauer* (1900), 23 Ind. App. 614; *Heinze* v. *Interurban R. Co.* (1908), 139 Iowa 189, 117 N. W. 385, 21 L. R. A. (N. S.) 715; *City R. Co.* v *Lee* (1888), 50 N. J. L. 435, 14 Atl. 883, 7 Am. St. 798; *Dickinson* v. *Port Huron, etc., R. Co.* (1884), 53 Mich. 43, 18 N. W. 553.

While appellant, as a common carrier of passengers, is not, under the law, an insurer of their safety, nevertheless, the law requires of it the exercise of the highest degree of care consistent with the mode of its conveyance and the practical prosecution of its business for the safety and protection of its passengers, and it is bound to continue the exercise of such care until its passengers have alighted from the cars at their destination, at the usual place of stopping the cars; and for its neglect to exer-

cise such care it is liable to a passenger who suffers an injury on account of such negligence, where no fault of his own is shown to have contributed to such injury. *Jeffersonville R. Co.* v. *Hendricks* (1866), 26 Ind. 228; *Terre Haute, etc., R. Co.* v. *Buck, supra,* and authorities cited; *Terre Haute, etc., R. Co.* v. *Sheeks* (1900), 155 Ind. 74; 3 Thompson, Negligence (2d ed.) §2862.

As a general rule, the authorities affirm that the law does not prescribe the particular manner in which a passenger must act or conduct himself in leaving the car or vehicle of the carrier. There is no rule of law that demonstrates whether a given course of conduct on his part will or will not constitute negligence. Therefore, the question, whether he, under the evidence and circumstances in the particular case, is guilty of contributory negligence, is, ordinarily speaking, a question of fact to be determined by the jury under proper instruction from the trial court. *Pennsylvania Co.* v. *Marion* (1890), 123 Ind. 415, 7 L. R. A. 687, 18 Am. St. 330; *Cleveland, etc., R. Co.* v. *Moneyhun* (1896), 146 Ind. 147, 34 L. R. A. 141; *Louisville, etc., R. Co.* v. *Crunk* (1889), 119 Ind. 542, 12 Am. St. 443; *Indianapolis St. R. Co.* v. *Hockett* (1903), 159 Ind. 677, and authorities cited; *Wabash River Traction Co.* v. *Baker* (1906), 167 Ind. 262; *Fleck* v. *Union R. Co.* (1883), 134 Mass. 480; 3 Thompson, Negligence (2d ed.) §§2953, 3592, 3600.

Appellee cannot be held as a matter of law to have been guilty of contributory negligence by reason of his acts in making preparation to alight from the car at Jewel; but this question, under the authorities that we have cited, was one of fact for the determination of the jury under proper instruction by the trial court. The jury having determined that issue adversely to appellant, and there being evidence to justify such finding, we are not authorized to disturb the judgment below upon the issue of contributory negligence. We cannot in any case adjudge as a matter of law that the complaining

party is guilty of contributory negligence, unless the facts are undisputed, and the conclusions or inferences to be deduced therefrom are also indisputable. *Cincinnati, etc., R. Co.* v. *Grames* (1893), 136 Ind. 39; *Cleveland, etc., R. Co.* v. *Moneyhun, supra.*

In this case, upon the question of appellee's negligence, it was the province of the jury to draw all reasonable conclusions from the facts that were found to be established by the evidence. The burden of proving contributory negligence rested, under the statute, upon appellant, and the jurors, upon sufficient evidence, having found that issue against it, their finding must be accepted as controlling in this appeal.

Appellant tendered to the court a request to give instruction two, whereby it asked the court to advise the jury that by the term "'proximate cause' is meant the inducing cause, or the act or acts which set in motion the chain of circumstances operating in continuous and uninterrupted sequence which produced the injury complained of." The court refused this charge, but, on its own motion, by instruction seven, informed the jury that "proximate cause is the cause not necessarily the closest in point of time to the injury of the person, but it is the cause which sets in motion the things which cause the injury."

The term "proximate cause" has been variously defined by the courts. Sometimes it is said to be the "probable cause," then again the "efficient cause," or "one which necessarily sets the other causes in motion." Proximate cause is an essential element or fact in actions arising out of negligence, and, as a general rule, the question of what is the proximate cause of the injury or wrong is one purely of fact for the decision of the jury, although it may, under undisputed facts, become a question of law. *Davis* v. *Mercer Lumber Co.* (1905), 164 Ind. 413.

As stated by the court in its charge, proximate cause is "not necessarily the closest in point of time to the injury."

We perceive no substantial difference in the instruction requested by appellant and the one given by the court. The latter stated that proximate cause is "that cause which sets in motion the things which cause the injury," while the former affirmed that it meant "the inducing cause, or the act or acts which set in motion the chain of circumstances operating in continued and uninterrupted sequence which produced the injury." It is true that the court in its charge omitted the word "efficient" immediately preceding the term "cause," but the statement that "it is the cause which sets in motion the things which cause the injury" is certainly the equivalent of stating that it must be the efficient or inducing cause. While it may be said that the instruction in question was not as well constructed as it might have been, nevertheless it substantially embraces the principle stated in the one requested by appellant, and it is apparent, we think, that the jury could not have been misled thereby to the prejudice of appellant. This view is fully confirmed when the charge in question is considered and construed along with other charges given by the court bearing on the same question. The court did not err in refusing to give the charge as requested.

The court, after reciting to the jury the allegations of the complaint, and stating that the answer of defendant was a general denial, advised the jury that the burden was

8. on plaintiff to "prove the material allegations of his complaint by a fair preponderance of the evidence, and if he has done so the finding should be for the plaintiff, and if he has not done so the finding should be for defendant." Appellant's counsel impute error in the giving of this instruction, because the court did not therein advise the jury to return a verdict for defendant in the event contributory negligence on plaintiff's part were established. The court by the charge in question was dealing alone with the complaint and the burden that rested on plaintiff thereunder in order to entitle him to recover. By other instructions the court

informed the jury that plaintiff could not recover if he were shown to be guilty of contributory negligence. The instruction in question cannot be held to be bad, because it does not apply to all of the separate issues involved in the case where such issues are covered by other instructions given by the court. *New Castle Bridge Co.* v. *Doty* (1907), 168 Ind. 259.

Other charges of the court are criticised by appellant's counsel, but an examination thereof discloses that the criticisms are not justified.

There is evidence fully to support a recovery by appellee, and no good reasons are advanced by appellant why the judgment should be disturbed upon the evidence. It appears that appellee was severely and permanently injured. The sight of one eye was destroyed and his hearing was very materially impaired. His skull was fractured, his right kneecap was broken, and he is in such a condition that it may be said that he is a "physical wreck." No question, however, is raised as to excessive damages.

No reversible error being presented by the record, the judgment is therefore affirmed.