Hoye, Administrator, etc. vs. The Chicago & Northwestern Railway Company.

*March 9 — March 31, 1885.*

*Railroads: Negligence causing death: Contributory negligence: Court and jury: Nonsuit.*

1. Unless the inference of negligence or its absence is necessarily deducible from the undisputed facts and circumstances proved, the question is one for the jury.
2. Upon the evidence in this case it is *held* that the question of the contributory negligence of the plaintiff's intestate, who was killed by a freight train of the defendant at a street crossing, in the night time, should have been submitted to the jury, and a nonsuit was, therefore, improperly ordered.

APPEAL from the County Court of *Milwaukee* County. The case is thus stated by Mr. Justice Cassoday:

"In the Third ward of Milwaukee, Buffalo street runs east from Milwaukee river to Lake Michigan. Four side tracks of the defendant run north and south across that street at right angles with it, each terminating at the bumpers 232 feet north of the sidewalk on the north side of that street. These side tracks were numbered consecutively, from the east westward, 8, 9, 10, and 11, respectively, so that the east side track was known as No. 8, and the west side track as No. 11. Immediately east of side track No. 8, and parallel with it, was Van Buren street. About eleven rods west of side track No. 11, and parallel with it was

Jackson street. These streets and side tracks were all so located at the time of the injury which caused the death of the intestate. The ends of the side tracks north of Buffalo street were used for storing freight cars, etc. The entire length of these freight cars and coupling, respectively, was about thirty-one feet.·

"On the evening of July 16, 1883, there were two freight cars standing on side track No. 10, north of Buffalo street, and up near or at the bumpers. About half past 10 o'clock on that evening the defendant's servants backed a freight train, consisting of ten or twelve freight cars, with an engine at the south end thereof, from the south upon side track No. 10, with the view of leaving the rear four freight cars of the train north of Buffalo street, on the same side track with the other two freight cars then standing thereon. The evidence tends to show that when the train had backed so far north that the rear five cars of the train had passed north of Buffalo street, the rear four of the cars became uncoupled, and the balance of the train started south; that the deceased was killed at or near where the sidewalk on the north side of Buffalo street crossed side track No. 10, by the movement of the train; that about the time named, the deceased started from her sister's, two and one-half blocks northeast of the place of the accident, for her home on Jackson street, southeast of the place of the accident; that there was a good deal of travel on Buffalo street; that no bell was rung, no light or other signal on the rear end of the train, and no guard at the crossing at the time the train backed over the street; that there was at the time no street light in the vicinity except a gas-lamp at the northwest corner of Buffalo and Jackson streets, 243 feet distant from the place of the accident; that the side track No. 10 descended from said sidewalk north to the bumpers; that at the time of the accident there was water over the ties immediately north of that sidewalk; that there was no

water on the pavement of the street or sidewalk where the accident occurred; that the deceased was found with her head between the two west wheels of the forward truck of the hind car, as it started south, nearly severed from the body, which was southeast of the head; that the clothing on her right side, though dry when she started home just before, was saturated with water; that the body had been dragged along the track to the place where it was found, from a point about two and a half feet south of the north line of the sidewalk, a distance of about twenty feet; that the brake-rod or brake-beam, under the car that did the killing, was elevated eleven inches above the top of the rails, and fifteen inches above the ties north of that sidewalk; that where that sidewalk crossed track No. 10, it was planked up nearly or quite level with the top of the rails, so that the brake-rod at that point was only eleven or twelve inches above the plank.

"This action is brought under the statute to recover damages for her death. On the trial the plaintiff was nonsuited on his own showing, and from the judgment entered thereon he appeals."

*N. S. Murphey*, of counsel, for the appellant.

For the respondent there was a brief by *Jenkins, Winkler & Smith*, and oral argument by *Mr. Winkler*.

CASSODAY, J. If the deceased came to her death through the neglect of the defendant' to ring the bell, or give other requisite signal, before and while the train was crossing the street, without any contributory negligence on her part, then the defendant would be liable. Sec. 1809, R. S.; *Bohan v. M., L. S. & W. R'y Co.* 58 Wis. 30; *Eilert v. G. B. & M. R. R. Co.* 48 Wis. 606; *Haas v. C. & N. W. R'y Co.* 41 Wis. 44; *Ransom v. C., St. P., M. & O. R'y Co. ante*, p. 178; *Bower v. C., M. & St. P. R'y Co.* 61 Wis. 457. The theory of the defense is that the train backed up until the front end of the

fifth car from the rear was at or near the north line of the sidewalk in question, when it stopped to uncouple the rear four cars, and that while standing in that position the deceased came along on the sidewalk from Van Buren street to the place where the train was so standing, and then undertook to pass through under the draw-bar between the front end of the fifth car and the one ahead of it, and while in the act of so doing the train started south, and she was caught under the fifth car and killed as stated.

The evidence tends to show that the draw-bar was about thirty-one inches above the rails. If this theory is conclusively established by the evidence, then there can be no question but what the deceased was guilty of contributory negligence, and hence that the nonsuit was properly granted. The difficulty in sustaining this theory is the absence of any direct evidence as to the precise part of the train with which she first came in contact, or which way the train was moving at the time, or the manner in which she so first came in contact with the train. In support of this theory, the defendant seems to rely upon these circumstances: (1) It was the forward west wheel of the fifth car from the rear of the original train, or the rear car of the balance of the train (after the four had been uncoupled), that ran over her. (2) A witness on the northwest corner of Buffalo and Jackson streets, 243 feet from the place of injury, and another witness sitting on the stoop of the house on the southwest corner of the same streets, each saw the train back up over the street, and then stop, and suddenly start back south, and then heard two screams, about two seconds apart in quick succession, from the place of the accident, and that the first scream was not heard until after the train had started south. (3) The witness on the northwest corner of Buffalo and Jackson streets stood at or near the gas-light, and testified that he saw the hind end of the train as it backed up over the sidewalk; that he could see along the sidewalk to the

end of the train and beyond it; and that he saw no one. But these are not the only features of the evidence, as will appear from the foregoing statement. There are still other items of evidence not there stated. Both of the two witnesses just referred to agree in stating that the stoppage for uncoupling was very short,— not more than two seconds,— and that the train had started south before they heard the first scream, and one of them said that the train had moved south from seven to ten feet before he heard the scream. The witness on the southwest corner of Buffalo and Jackson streets said he could not have seen any one at the time, at the place of the accident, unless the person had had a lantern. Two witnesses in a house fronting the south on Buffalo street, and only sixty feet west of the place of the accident, testified, in effect, that at the time they heard three screams from the place of the accident, and that the two last were in quick succession; but that the first was a shriek, and somewhere from a half a minute to two minutes before the second scream.

It appears from the measurements made that if the train backed clear up to the south car standing upon the track, and the car north of it was up against the bumpers, then, when the train stopped, the front end of the car which finally did the killing was over sixteen feet north of the north line of the sidewalk. The fact that when found her clothing on one side was saturated with water, and that fragments of her clothing were found on the plank and pavement for the distance of twenty feet, where she had apparently been dragged by the car, and that the brake-rod was about fifteen inches above the ties while that car was north of the sidewalk, and only eleven or twelve inches above the plank and pavement when it reached them, with the other facts and circumstances stated, are urged as evidence to support the plaintiff's theory, which is, in effect, that the deceased reached that part of the sidewalk covered by track No. 10

just as the rear end of the train, backing north unobserved, approached her and pushed or knocked her off into the water, between the rails, immediately north of the north line of the sidewalk; and that, stunned by the occurrence, or otherwise, she there remained while the five cars were backed over her, and that when the train started back she was caught by the brake-rod, or some other projection on the under side of the car, and dragged up out of the water onto the plank, and from thence onto the pavement; and that the first scream mentioned was when she was first struck by the rear end of the rear car; and that the last two screams occurred after she was so caught, and while the train was moving south.    The features of this theory most strongly urged, are the evidence of her utterance of three screams, and the comparatively long interval between the first and the second scream, and the fact that a portion of her clothes were saturated with water.    For the purpose of accounting for the wet clothing, it might, perhaps, be urged, even upon the defendant's theory, that the deceased attempted to go through between the cars, under the draw-bar, while the front end of the car was a few feet north of the north line of the sidewalk.

The difficulty here confronting us is whether the court, as a matter of law, under all the facts and circumstances disclosed in the evidence, had the right to adopt, as conclusively proved, the defendant's theory, or any other theory, holding the deceased guilty of contributory negligence, or whether that question, after all, should not have been submitted to the jury.    In determining that question we must assume that all of the evidence given in this case would have remained undisputed, and then we must give to all the facts and circumstances the construction most favorable to the plaintiff that they will legitimately bear, including all reasonable inferences to be drawn from them. *Spensley v. Lancashire Ins. Co.* 54 Wis. 433; *Sabotta v. St. Paul F. &*

*M. Ins. Co.* 54 Wis. 687; *Hill v. Fond du Lac,* 56 Wis. 246; *Johnson v. C. & N. W. R'y Co.* 56 Wis. 282; *Fitts v. Cream City R. R. Co.* 59 Wis. 325; *Nelson v. C., M. & St. P. R'y Co.* 60 Wis. 323. Upon such assumption and construction we must, in order to justify the nonsuit, be able to say that such facts and circumstances were not ambiguous, and that there was but one honest and apparently reasonable conclusion to be drawn from them, and that was in harmony with the theory of the defense. *Ibid.* It is only when the inference of negligence, or the absence of it, is necessarily deducible from the undisputed facts and circumstances proved, that the court is justified in taking the case from the jury. *Ibid.*

If, on the other hand, such facts and circumstances, though undisputed, were ambiguous, and of such a nature that reasonable men, unaffected by bias or prejudice, might have disagreed as to the inference or conclusion to be drawn from them, then the case should have been submitted to the jury. *Kaples v. Orth,* 61 Wis. 531; *Nelson v. C., M. & St. P. R'y Co.* 60 Wis. 324; *Hill v. Fond du Lac,* 56 Wis. 246.

These rules of law are applicable to contributory negligence as well as negligence. We have purposely refrained from expressing any opinion as to the plausibility of either of the respective theories, or any theory, because, in our judgment, under the rules of law stated, it was for the jury, and not the court, to determine whether the deceased was guilty of contributory negligence.

For the reasons given the judgment of the county court must be reversed, and the cause remanded for a new trial.

*By the Court.*— It is so ordered.