CITIZENS STREET RAILROAD COMPANY *v.* HOFFBAUER.

[No. 2,884. Filed January 9, 1900.]

STREET RAILROADS.—*Injury to Passengers.—Contributory Negligence.* —Plaintiff entered a street-car after dark which was running backward toward the central part of the city on a single track. At the intersection of a double track the car ran forward on the west track instead of the east, thus placing the running-board extending along the side of the car next to the trolley poles between the tracks. Plaintiff, observing that he was being carried away from his destination, and not knowing that the car was on the wrong track, stepped upon the running-board and started toward the conductor to procure a transfer ticket, when he was struck by a trolley pole and injured. *Held*, that the question of plaintiff's negligence was properly submitted to the jury. *pp. 615-623.*

SAME.—*Evidence.—Contributory Negligence.*—In the trial of an action against a street railway company for injury to a passenger while passing along the running-board of the car, evidence that the usual

Citizens St. R. Co. *v.* Hoffbauer.

and ordinary use of the running-board was for passengers to go from one part of the car to another, and that passengers used it for that purpose, was properly admitted in evidence as showing defendant's knowledge of the general uses of the running-board in determining the question of contributory negligence.    *pp. 623, 624.*

INSTRUCTIONS.—*Modification.—Practice.*—Requested instructions may be modified by the court, and made applicable to the evidence. *p. 624.*

SAME.— *Modification.— Practice.— Street Railroads.*— In an action against a street railway company for injury to a passenger while standing on the running-board of the car, an instruction requested by the defendant to the effect that if the passenger did certain things he was guilty of contributory negligence and could not recover was properly modified so as to define the general use of the running-board, where there was evidence showing the general' use of the running-board by passengers.    *pp. 624, 625.*

SAME.—*Evidence.*—An instruction in the trial of an action against a street railway company which assumed that the car was running backward at the time of plaintiff's injury was properly refused where the undisputed evidence showed that the car was running forward at the time of the injury.  *p. 625.*

SAME.—*Invading Province of Jury.*—An instruction in the trial of an action for personal injuries that if the jury found for plaintiff they might take into consideration the nature of his injuries, any physical or mental pain which he has suffered, as shown by the evidence, also any expense incurred for medical attendance, and any loss of time, loss of wages or employment, and give him such damages as will compensate him for the injuries he has sustained, not exceeding the amount named in the complaint, is not objectionable as assuming the truth of facts in issue.    *pp. 625, 626.*

SAME.—*Invading Province of Jury.—Street Railroads.*—An instruction in an action against a street railway company for personal injury to a passenger while on the running-board of the car, that if defendant was running the car in question so that the running-board was on the side next to the trolley poles, and that defendant was running the car without giving any warning to passengers of danger from the trolley poles, that such acts would constitute negligence, was erroneous, and an invasion of the province of the jury. *pp. 626-630.*

From the Marion Superior Court.  *Reversed.*

*Ferdinand Winter* and *W. H. Latta,* for appellant.
*J. W. Kealing* and *O. B. Iles,* for appellee.

ROBINSON, J.—Action for damages for personal injuries. Appellee was a passenger on appellant's car, and while pass-

ing from his seat along the foot-board of the car was struck by a trolley pole near the track. Demurrers to each of the two paragraphs of complaint overruled. Answer of general denial. Jury returned a general verdict for appellee with answers to interrogatories. Appellant's motions for judgment on the answers, and for a new trial, were overruled.

The first paragraph of complaint avers that on August 2, 1895, appellee became a passenger on one of appellant's cars running on Hill avenue, Indianapolis, intending to go to the central portion of the city; that, at the time the car was backing on Hill avenue, in a westerly direction towards the central portion of the city; that Hill avenue has no poles between or immediately near the tracks; that he took a seat on the rear seat as such car was backing down; the car was an open or summer car, with a platform or running-board lengthwise on one side to permit the ingress and egress of passengers, the opposite side being screened and guarded to prevent passengers from entering or leaving the car on that side, and which side was placed and run next to the center or pole side of the tracks where poles were maintained; that appellant maintained a double track running north on Columbia avenue, and between the tracks maintained poles dangerously near the tracks; that appellant ordinarily ran cars north on Columbia avenue on the east or right-hand track, with the closed side of the car next to the poles, and the running-board side on the east or outside of the track to permit with safety the entrance and alighting of passengers; that when the car reached Columbia avenue en route to the central portion of the city, appellant, instead of proceeding down to the central portion of the city, proceeded north up Columbia avenue, and instead of running the car on the east track, as such cars run ordinarily, it was negligently and carelessly run on the west track, thus placing the running-board next to the iron poles; that the employes in charge of the car negligently failed to warn appellee of the danger from the poles; that when the car passed up Columbia ave-

nue the seat occupied by appellee was so arranged that his back was towards the motorman, and his face towards the conductor; that appellee believed the car was being run on the east track as ordinarily; that he could not see and did not know the car was on the west track with the running-board next to the poles; that his position was such that he could not and did not see the poles nor danger of stepping on the running-board; that the car was negligently run at a great rate of speed; that when appellee discovered the car was going north on Columbia avenue, and believing the same would continue north, and being desirous of reaching the central portion of the city, without fault on his part, and totally ignorant of the danger of stepping upon the running-board, ignorant of the fact that the car was on the west track, and without opportunity of knowing and observing the same, and believing the car was on the east track, and relying and believing that the car was being properly managed, stepped upon the running-board and started towards the conductor, who stood at the rear end, to procure a transfer ticket to a south bound car, intending to alight and proceed to his destination; that the conductor negligently and carelessly failed to warn appellee of his danger, and negligently failed to signal the car to stop; that while moving along the running-board toward the conductor, in plain view of the conductor, and totally unconscious of the danger, and without fault on his part, and wholly because of the carelessness and negligence of appellant, he was struck by one of the poles near the track and injured.

The second paragraph, omitting the averment as to speed of car, contains additional averments that appellant had negligently constructed its tracks, in that no provision was made by which cars backing on Hill avenue, in case of accident or otherwise, could enter the east track on Columbia avenue with the running-board away from the poles; that the car was constructed with seats running crosswise, and with a running-board by the side of and along the

entire length of the car for the use and convenience of
passengers entering the same; that the conductor saw appel-
lee as he stepped on the running-board and started towards
him, but negligently failed to warn him of his danger; that
cars on Hill avenue are ordinarily run past Columbia ave-
nue tracks down to the city; that when appellee stepped on
the running-board he could not, because of darkness, see
the poles or the danger of collision with them.

The discussion of the questions reserved, as stated in
appellant's brief, covers practically the same ground, so far
as the legal effect of each of the assigned errors is con-
cerned. The discussion is directed to the questions of ap-
pellant's negligence, and appellee's freedom from fault.

The special answers show that appellee, at 7:30 p. m.,
August 2nd, became a passenger and was furnished a safe
seat on an open or summer car with a running-board the
entire length on the right side, and on the left side a screen
to prevent passengers from getting in or out; that the car
was on Hill avenue running backward, which appellee knew;
the track on Hill avenue connected with a double track at
Hill, Home, and Columbia avenues, so cars could pass on
the west track of Columbia avenue and thence on the north
track of Home avenue to the city; that the car backed
on the west track of Columbia avenue, which threw the
running-board next to the poles, and proceeded northward
to be turned and run to the city with the running-board
away from the poles; that the car had gone about 150 feet,
at a speed of not less than four miles an hour, when appel-
lee left his seat and got out on the running-board, and after
walking three or four feet toward the rear end of the car
was struck by one of the poles between the tracks; that
before getting out on the running-board appellee did not
look to see if there was any danger in doing so, did not
signal the conductor or motorman, but got out of his own
volition; that the conductor had no knowledge that appellee
would leave his seat and get out on the running-board, and

that the car, with the exercise of ordinary care, could not have been stopped after he got on the board and before he was .struck; after passing on the west track the conductor did not notify the passengers to look out for the poles; that the conductor after he saw appellee upon the running-board could not have warned him of danger from the poles in time to prevent the injury; that the running-board was used by passengers in passing to the rear of the car; that the outer edge of the board was within a few inches of the poles; that there was no switch at the intersection of the north track on Hill avenue and the east track on Columbia avenue; that appellee knew that cars backing down Hill avenue in case of accident could not enter on the east track of Columbia avenue; that appellee did not know the car had entered on the west track on Columbia avenue; that he was sitting with his back toward the poles, and did not know the running-board was next to the poles; that it was growing dark, and appellee did not see the poles; that before stepping on the running-board appellee arose to his feet and looked at the conductor, who saw appellee; that he did not see the poles when he rose to his feet or stepped on the board; that no warning of any kind was given by the conductor or by any person to the appellee; that at the time objects outside the car could not be distinctly seen; that under all the circumstances appellee exercised such care as would be exercised by an ordinarily prudent person under like circumstances.

The complaint charges negligence on appellant's part, in that the car, under the particular circumstances enumerated, was run on the west track on Columbia avenue, with the running-board next to the poles, instead of the east track, and that appellant failed to warn the passengers of danger from the poles while the car was so running; that, after appellee left his seat and got on the board, appellant's conductor, who saw him, failed to warn him of the danger, or stop the car; and the negligent construction of the track, and switch at

the intersection of the tracks, and the location of the poles between the tracks. As there was no evidence to support this last charge, it need not be further noticed.

It is a well settled rule that a carrier of passengers is held to the highest degree of care and diligence for the safety of passengers, consistent with the mode of conveyance employed. This rule has been differently stated by different courts, and in this State it is held that in cases of this character the omission to exercise the highest degree of practicable care constitutes negligence, while in other cases the failure to exercise ordinary care constitutes negligence. *Louisville, etc., R. Co.* v. *Snyder*, 117 Ind. 435, 10 Am. St. 60, 3 L. R. A. 434; *Anderson* v. *Scholey*, 114 Ind. 553; *Citizens St. R. Co.* v. *Twiname*, 111 Ind. 587; *Terre Haute, etc., R. Co.* v. *Buck*, 96 Ind. 346, 49 Am. Rep. 168, and cases cited. *Jeffersonville, etc., R. Co.* v. *Hendricks*, 26 Ind. 228.

And the duties imposed by the law upon those who operate steam railways is not the same as that imposed upon those who operate street railways. The principles of law which govern these two systems of transportation are not altogether the same although many general rules are applicable to both. *Anderson* v. *Citizens St. R. Co.*, 12 Ind. App. 194; *Cogswell* v. *West St., etc., R. Co.*, 5 Wash. 46, 31 Pac. 511, 52 Am. & Eng. R. Cas. 500.

A street railway engaged in the carriage of passengers is not an insurer; but it must use every reasonable precaution in the management and operation of its cars. And its duties in this regard are not the same when it is operating its cars in the usual manner as when in an unusual manner. If the car is run in an unusual manner, and a danger arises therefrom which does not ordinarily exist, it is the company's duty to warn passengers of such danger. A passenger has the right to presume, in the absence of knowledge or warning to the contrary, that all necessary precautions have been and will be taken for his safe transportation. The care and

vigilance required in operating an open car may be greater than that required in operating a closed car. If a danger approaches of which the passengers are ignorant they should be notified so they may take steps to avoid it. As sustaining these propositions see: *Richmond City R. Co.* v. *Scott,* 86 Va. 902, 11 S. E. 404; *Chicago City R. Co.* v. *Rood,* 62 Ill. App. 550; *North Chicago, etc., R. Co.* v. *Cook,* 145 Ill. 551, 33 N. E. 958; *Elliott* v. *Newport St. R. Co.,* 18 R. I. 707, 28 Atl. 338, 31 Atl. 694, 23 L. R. A. 208; *Covington, etc., St. R. Co.* v. *McCleave* (Ky.), 38 S. W. 1055; *Topeka City. R. Co.* v. *Higgs,* 38 Kan. 375, 16 Pac. 667; Booth Street Railroads, §§309, 327, 360; *Spellman* v. *Transit Co.,* 36 Neb. 890, 55 N. W. 270, 20 L. R. A. 316; *McLean* v. *Burbank,* 11 Minn. 277.

It is evident that a passenger might leave his seat in the car, and go upon the running-board, under circumstances which would require a court to say, as matter of law, that he was guilty of negligence, and assumed the risk of contact with things outside the car. But in the case at bar what were the circumstances? Appellee had entered a car running backwards where there was a single track. He soon found the car was carrying him away from his destination, and was running head end first, as cars were usually run. The conductor was at the rear end of the car. He had paid his fare to the city, and wanted a transfer. He was anxious to get to the city to keep an appointment. This transfer he must get from the conductor. The foot-board was ordinarily used by passengers to go from seat to seat and to the rear end of the car. The car was apparently on the right-hand track, with the running-board away from the poles. Cars on that line generally passed up the right-hand track. It was growing dark, and there was nothing to indicate to him that the car was on the left track and the running-board next to the poles. He had no warning that it was dangerous to use the foot-board. He did not know that the car had passed on the left track at the switch. Were not the cir-

cumstances and conditions surrounding him such as, in the absence of warning, would tend to deceive an ordinarily prudent person? Whether or not he was negligent in what he did was a question for the jury. The conditions and circumstances were not such that we can say, as matter of law, that his own negligence contributed to his injury. It was proper to submit to the jury the question of his negligence, and they not only answered the question in his favor in the general verdict, but in answer to an interrogatory they say that, under all the circumstances of the case, appellee at the time of the injury, exercised such care as would be exercised by an ordinarily prudent person under like circumstances. Thus it is said: "It is plain, however, we think, that in very many cases the question as to whether a person injured at a crossing exercises ordinary care under the particular circumstances, is one for the jury. The court can not adjudge that negligence exists as a matter of law in any case, unless the facts are undisputed, and the conclusions to be drawn therefrom are indisputable. 'The question of negligence must be submitted to the jury as one of fact not only where there is room for difference of opinion between reasonable men as to the existence of the facts from which it is proposed to infer negligence, but also where there is room for such difference as to the inferences which might fairly be drawn from conceded facts.' " *Cincinnati, etc., R. Co.* v. *Grames*, 136 Ind. 39, and cases there cited. 1 Shear. & Redf. Neg. (5th ed.), §54; Beach Contr. Neg. (3rd ed.), §§449, 450; *Dahl* v. *Milwaukee City R. Co.*, 62 Wis. 652, 22 N. W. 755; *Hoye* v. *Chicago, etc., R. Co.*, 62 Wis. 666, 23 N. W. 14; *Louisville, etc., R. Co.* v. *Williams*, 20 Ind. App. 576; *Watkins* v. *Birmingham, etc., R. Co.*, (Ala.), 24 South. 392, 43 L. R. A. 297.

There are cases where the courts have defined what "ordinary care under the circumstances" means; as, where a person approaches a railroad crossing, he must look for trains and warnings, must listen for signals, and must not attempt

to cross in front of a moving train.  Failure to observe these precautions is, as matter of law, contributory negligence. The kind and exact quantity of care to be used is prescribed. The jury have the standard fixed for them.  If they find facts which show a failure to attain that standard, the law declares negligence exists.  The conduct of the complaining party in such cases is such as to shock the mind of an ordinarily prudent person and shows a plain disregard for common care and caution.  In such cases a court may well say that the party's conduct showed a plain and reckless disregard for his own safety.  But a court may not declare that negligence does or does not exist in any case simply because the facts are undisputed.  But the question is, even though the facts be undisputed, is there room for difference of opinion as to the inferences and conclusions that may be drawn from these undisputed facts?  If the inference of negligence, or its absence, necessarily follows from the undisputed facts, it is a question of law; if not, it is for the jury.  "In the ultimate determination of the question," says Beach on Contr. Neg. (3rd ed.), §452, "whether the plaintiff was guilty of negligence, two separate inquiries are involved:  first, what was ordinary care under the circumstances? and second, did the conduct of the plaintiff come up to that standard?  With respect to the standard of ordinary care it may be remarked that it is not always a fixed standard, and in many cases it must first be found by the jury. In such a case each of these inquiries is for the jury.  They must assume a standard, and then measure the plaintiff's conduct by that standard."

Taking all the circumstances and conditions existing at the time the injury was received, there was no error in the court's refusal to instruct the jury to find for appellant because of the contributory negligence of appellee.

There was no error in permitting witnesses to testify that the usual and ordinary use of the running-board was for passengers to go from one part of the car to another, and

that passengers used the running-board for that purpose. The averments of the complaint were broad enough to admit the evidence. The company could not daily permit a certain part of its car to be used for certain purposes by passengers, and then be heard to say it was not liable for an injury to a passenger so using the car, because that particular part was constructed for another purpose. But the evidence was competent, because appellee's knowledge of the general uses of the running-board became material in determining the question of contributory negligence.

Instruction five and one-half requested by appellant, and refused, was to the effect that it is the duty of the carrier to provide seats which are safe for the carriage of its patrons, and that it is the duty of a passenger to take such seat so provided, and remain in the same until he has reached his destination; the passenger having the right to rely upon the obligation of the carrier to transport him to his destination without himself taking any concern as to the route or direction of the car or the manner of its operation. This instruction was properly modified by the court and made applicable to the evidence. There was evidence that passengers ordinarily used other parts of the car for certain purposes with the knowledge and consent of the company.

The seventh instruction requested, and refused, left out of consideration the fact of the general use of the running-board by passengers. This instruction was embodied in an instruction given by the court, although in the court's instruction the jury were told that if the passenger did certain things he was guilty of negligence, and could not recover, and the instruction requested was to the effect that, if the passenger did certain things, he assumed the risk, and could not recover. The instruction given by the court included the principle contained in the instruction requested, and also told the jury that where the usual and customary manner of running the car was with the running-board opposite the trolley poles, which customary manner was

known to the passenger, and if the car is in fact running with the running-board next to the poles, which fact the passenger does not know, then the passenger would not be held to the same degree of negligence in looking for poles as he would had he known of such irregular running; but that, in any event, he must use reasonable and ordinary care under all the circumstances to ascertain approaching danger.

When appellee in the case at bar went upon the foot-board he took upon himself the duty of looking out for himself against the usual and obvious peril of the place, as long as the car was operated and managed in the usual manner. But the danger of being hit by a trolley pole while on the foot-board was not such a danger as he was bound to anticipate when the car was running in the unusual manner of having the foot-board next to the trolley poles, and he had no knowledge that it was so running. In the absence of knowledge, he had the right to assume that the car was properly managed and was running with the foot-board away from the poles, and that there was no danger from trolley poles while on the foot-board. His failure to look ahead was not necessarily negligence unless he had reason to anticipate danger. He had the right to assume that appellant was running the car in the usual manner, and that it would perform its duty in guarding the safety of its passengers. See *City R. Co.* v. *Lee,* 50 N. J. L. 435, 14 Atl. 883; *Dickinson* v. *Port Huron, etc., R. Co.,* 53 Mich. 43, 18 N. W. 553.

The thirteenth instruction requested was properly refused, because it assumes the car, at the time of the injury, was running backwards. The evidence is undisputed that at the time of the accident the car was running head end first. A party making a proper request is entitled to a specific charge upon his theory of the case if there is material evidence fairly tending to support it.

The eleventh instruction is as follows: "If you find for the plaintiff then in estimating his damages you may take into consideration the nature and extent of. his injuries, whether the same are permanent or temporary; you may also take into consideration any physical or mental pain which he has suffered, as shown by the evidence, any loss of time, loss of wages or employment; also any expenses incurred for medical and surgical attendance or for nursing, and from all the surrounding facts, as shown by the evidence, you will give to him such damages as will compensate him for the injuries he has sustained, not, however, exceeding the amount named in the complaint."

An instruction to the jury can not assume the truth of facts in issue between the parties. But the above instruction is not open to this objection. Taking the instruction as a whole we do not see how any juror of average intelligence could fail to understand that he was required to be guided by the evidence. *City of Indianapolis* v. *Scott,* 72 Ind. 196; *Louisville, etc., R. Co.* v. *Falvey,* 104 Ind. 409.

Appellee testified that he was a policeman when injured, that he had never lost any pay as such officer since the accident, and that he had drawn his pay every day. The court should not have included in the instruction the expression, "loss of wages, or employment." But we can not say that such error is reversible error. The instruction taken as a whole means that if the evidence shows loss of wages or employment the jury may consider them. That part of the instruction was not applicable to the evidence, but as its inapplicability was not presumably injurious we can not reverse the case on that ground.

The seventh instruction to the jury reads: "If the jury find from the evidence that at the time of the accident in controversy the defendant was running the car in question and on which the plaintiff was a passenger north on Columbia avenue upon the west track of its Columbia avenue line, so that the running-board of said car was on the side next to

the trolley pole, and that the defendant was running the car in question without giving any warning to the passengers on said car, or to the plaintiff, of danger from the trolley poles, then such acts on the part of the defendant's employes would constitute negligence on the part of defendant."

Appellee testified that the conductor, who was on the rear platform of the car, saw him as he arose from his seat, and as he was going back towards him on the running-board. There was evidence that no warning was given the passengers.

The care and diligence required of carriers of passengers is expressed variously by the different courts, but all are agreed that the highest degree of care is required to prevent injury to passengers. Thus in ·Smith v. St. Paul City R. Co., 32 Minn. 1, 18 N. W. 827, it is held that street railway companies, as carriers of passengers for hire, are bound to exercise the highest degree of care and diligence consistent with the nature of their undertaking, and are responsible for the slightest negligence. In Maverick v. Railroad Co., 36 N. Y. 378, the court say: "Passenger carriers bind themselves to carry safely those who they take into their coaches to the utmost care and diligence of very cautious persons." In Wheaton v. North Beach, etc., Co., 36 Cal. 590: "Passenger carriers by their contract bind themselves to carry safely those whom they take into their coaches or cars, as far as human care and foresight will go,. that is, for the utmost care and diligence of very cautious .persons." In Sales v. Stage Co., 4 Iowa 546: "Carriers of passengers for hire'are bound to exercise the utmost skill and prudence in conveying their passengers, and are responsible for the slightest negligence or want of skill in either themselves or their servants." In Indianapolis, etc., R. Co. v. Horst, 93 U. S. 291, it is said: "The highest degree of carefulness and diligence is expressly exacted.  *  *  *  The standard of duty should be according to the consequences that may ensue from carelessness. The rule of law has its foundation deep in public

policy. It is approved by experience, and sanctioned by the plainest principles of reason and justice. It is of great importance that courts of justice should not relax it. The terms in question do not mean all the care and diligence the human mind can conceive of, nor such as will render the trasportation free from any possible peril, nor such as would drive the carrier from his business. \* \* \* But it does emphatically require everything necessary to the security of the passenger, and reasonably consistent with the business of the carrier, and the means of conveyance employed." See, also, *New York, etc., R. Co.* v. *Lockwood,* 17 Wall. 357; *Derwort* v. *Loomer,* 21 Conn. 245; *Cartwright* v. *Chicago, etc., R. Co.,* 52 Mich. 606, 18 N. W. 380; *Richmond City R. Co.* v. *Scott,* 86 Va. 902, 11 S. E. 404; *Hammond, etc., R. Co.* v. *Spyzchulski,* 17 Ind. App. 7.

Not only is this high degree of care and caution required of the carrier, but where an injury occurs to a passenger through a defect in the car, or from its management and control, or from anything pertaining to the service which the company ought to control, the law will presume negligence on the part of the company. *Pittsburgh, etc., R. Co.* v. *Williams,* 74 Ind. 462; *Peoria, etc., R. Co.* v. *Reynolds,* 88 Ill. 418; *Seyboldt* v. *New York, etc., R. Co.,* 95 N. Y. 562, 47 Am. Rep. 75; *Feital* v. *Middlesex, etc., R. Co.,* 109 Mass. 398; *Cleveland, etc., R. Co.* v. *Walrath,* 38 Ohio St. 461; *Denver, etc., R. Co.* v. *Woodward,* 4 Colo. 1; *Stokes* v. *Saltonstall,* 13 Pet. 181; Booth, Street R. Law, §361.

In Hutchinson on Carriers, §637, it is said: "But, as we have seen, he owes to his passenger not only the duty of transportation, but that of exercising for his safety the utmost care and diligence compatible with the nature of the carriage, and the further duty of protecting him against the assaults and trespasses of other passengers and of strangers while upon his conveyance. He owes him the still further duty, as has been shown, of warning him against danger when it is at hand, and of cautioning him against

acts of imprudence which may endanger his person, whenever the circumstances are such that the safety of the passenger would seem to require it." See Wharton on Neg. §649.

In this instruction the court says that if certain acts are shown the company's negligence is shown; in other words, that such acts are negligence *per se*. The instruction, in effect, states an abstract principle of law. It is true the instruction is to be construed in connection with all the other instructions in the case, and it is limited to the time and place of the accident. But it is in effect a statement to the jury that certain acts are negligence *per se*. The principle stated in it is not qualified by any facts or circumstances that may have existed at the time. The question is thus presented whether the instruction did not take from the jury the right to find the ultimate fact of negligence.

While negligence is not capable of definition after the fashion of the exact sciences, yet courts are under the necessity of giving the term a meaning. They can not say that negligence does or does not exist without defining its meaning, and when a text-writer says that the term can not be defined he can mean no more than that the term can not be given a universal definition. In the case at bar the trial court told the jury that "Negligence, whether on the part of the plaintiff or of the defendant, may be defined as the want of ordinary or reasonable care in respect of that which it is the duty of a party to do or to leave undone." As applied to the particular case, this definition is not open to objection. Based upon this definition the negligence of appellant consisted in the want of ordinary or reasonable care for the safety of its passengers while so running its car. But it must be admitted that this want of ordinary or reasonable care may depend upon a number of circumstances existing at the time. The instruction is not qualified with respect to the necessity of operating a car at times on the wrong track, or of the passenger's knowledge of the conditions,

and other circumstances which might exist. The conditions existing at the time may have been such that the safety of ·the passengers would not seem to require any warning. The jury were told that if they found the two facts, namely, that the car was on the wrong track, with the running-board next to the poles, and that the passengers were not warned, negligence was shown. This was taking from the jury the question which they should decide from all the facts and circumstances existing at the time. Although the carrier of passengers is held to the highest degree of care, it will not do to say that this care is the same under any and all circumstances. It is true that contributory negligence as matter of law has been declared under certain facts, but the rule is based upon the injustice of allowing a party who has shown an utter disregard for his own safety to complain of another's negligence. And where a statute or municipality has prescribed a certain duty a failure to perform that duty has been, by the courts, declared to be negligence. The rule exists because of the statute, and until the statute it did not exist. For the reasons above given, we think the seventh instruction is too broad, and should not have been given.

Judgment reversed, with instructions to sustain appellant's motion for a new trial.

Henley, J., concurs in conclusion reached.