UNION TRACTION COMPANY OF INDIANA *v.* SULLIVAN.

[No. 4,997. Filed November 28, 1905. Rehearing denied January 26, 1906. Transfer denied June 29, 1906.]

1. STREET RAILROADS.—*Passengers.—Riding on Running-Board. —Contributory Negligence.*—A passenger riding on the running-board of a street car is not guilty of contributory negligence as a matter of law. p. 519.

2. TRIAL.—*Contributory Negligence.—Burden of Proof.—Verdict.—General.*—Contributory negligence is a defense in actions for personal injuries, and a general verdict for plaintiff is a finding of freedom from such negligence. p. 519.

3. SAME.—*Verdict.—General.—Special.—When Controlling.*—The answers to the interrogatories to the jury control the general verdict only when they are irreconcilable therewith upon any state of facts provable under the issues. p. 520.

4. STREET RAILROADS.—*Care Required.—Passengers.—Presumptions.*—A passenger on a street car has the right to presume that all necessary precautions have been taken by the company for his safe transportation. p. 520.

5. STREET RAILROADS.—*Passengers.*—*Contributory Negligence.*— *Questions for Jury.*—A passenger on a street car, who knowingly exposes himself to a danger such as ordinarily prudent men would not encounter, or who, by the exercise of ordinary care, could avoid danger and who fails to do so, is guilty of contributory negligence, and these questions are usually for the jury.    p. 520.

6. SAME. — *Passengers.* — *Riding on Running-Board.*—*Presumptions.*—Passengers riding on the running-board of a street car are presumed to be so riding with the consent of the company. p. 521.

7. SAME.—*Bridges.*—*Passengers.*—*Notice.*—*Contributory Negligence.*—*Question for Jury.*—Because a passenger knows of a bridge and has ridden over it, does not, as a matter of law, render him guilty of contributory negligence in riding over same on the running-board of a street car, such question being for the jury.    p. 522.

8. SAME.—*Passengers.*—*Notice of Defects.*—*Contributory Negligence.*—*Question for Jury.*—It is a question for the jury whether plaintiff was guilty of contributory negligence in riding, facing backward, on the running-board of a street car through a bridge of which he had a general knowledge and in which he was struck by a post and injured, the car being crowded except the front vestibule, and the conductor knowing of plaintiff's position, the fact that no other person was ever so injured being a fact for the jury's consideration.    p. 522.

9. TRIAL.—*Negligence.*—*General Damages.*—*Special.*—*Loss of Time.*—It is erroneous to permit plaintiff, in an action for personal injuries, wherein he demands general damages only, to recover damages for loss of time, earning capacity or business loss, such damage being special.    p. 527.

From Randolph Circuit Court; *J. W. Macy,* Judge.

Action by Martin Sullivan against the Union Traction Company of Indiana. From a judgment on a verdict for plaintiff for $1,000, defendant appeals. *Reversed.*

*Gilbert R. Call, James A. Van Osdol* and *Engle, Caldwell & Parry,* for appellant.

*George H. Koons* and *Benjamin F. Marsh,* for appellee.

MYERS, J.—Appellee instituted this action against appellant to recover damages for personal injury. The action was begun in the Delaware Circuit Court, and on change of

venue, was sent to the Randolph Circuit Court, and there tried before a jury, resulting in a verdict for appellee and judgment on the verdict.

This cause was tried upon an amended complaint in one paragraph, in which it is averred that appellant is the owner of and engaged in operating an electric street railway in the city of Muncie, and suburbs thereof, and that one of its lines crosses a bridge over White river, on which line it used what is known as open, summer cars; that on August 29, 1901, appellee was a passenger on one of such cars, and while riding on the running-board thereof collided with a post forming a part of the upper structural work of said bridge, and was knocked off and injured. The complaint alleges negligence in running said cars in such close proximity to said post as to endanger the life and limbs of passengers so riding; that appellee did not know of the danger of colliding with said post and was not warned by appellant or anyone else of the danger therefrom; that the car was filled with passengers, leaving the running-board the only place for appellee to ride at the time of boarding the car; "that by reason of the negligence of the defendant, as aforesaid, plaintiff's body struck the iron post on the southwest end of said bridge with great force and violence, causing him to lose his footing upon said car and fall off upon the girders, ties and rods at the side of and on said track and against said car, whereby plaintiff was greatly and painfully injured and suffered a long, deep cut and bruises on the left side of his head, a painful cut and bruise on his left shoulder, a fracture of the eighth rib on the left side, and numerous painful bruises upon various parts of his body, and suffered a severe shock to his entire system; that by reason of said injury and the suffering and pain consequent therefrom, plaintiff has been damaged," etc. Appellant answered by general denial.

I. Appellant assigns as error in this court the overruling of its motion for judgment on the interrogatories and an-

swers thereto, notwithstanding the general verdict. There were 158 interrogatories submitted to the jury, which they answered and returned with their general verdict. By this great number of interrogatories substantially the following facts are found: Sometime before August 29, 1901, the day appellee received his injury, a bridge across White river had been constructed, and from the time of its construction until the day of the accident it had been maintained by Delaware county or the city of Muncie, and not by appellant. It was so constructed and maintained that the center portion of the same was used as a wagonway across said river, and on either side of this wagonway at the entrance of the bridge from the city of Muncie were upright iron or steel posts about thirty feet high, forming part of the structural work thereof. On the west side of this wagonway and from the iron or steel posts said bridge was extended, and this extension was used by appellant for its street car tracks in crossing the river with its cars. On said August 29, and for ten or twelve years prior thereto, appellant had been engaged in operating street cars by electricity in and through the streets of the city of Muncie and over this bridge, and on said day, at about 9 o'clock in the evening, appellee, being in the city of Muncie, desired to go to the fair grounds, the place where he was then engaged in taking care of horses, and with a companion boarded one of appellant's cars, No. 107, at a point in the city of Muncie, for the purpose of being carried as a passenger to his destination, which was across the bridge. Said car No. 107 was one used by appellant and run over its line from the city of Muncie across the bridge and to the fair grounds. Said car was one known as an open, summer car, a little over twenty-nine feet in length, having a vestibule in each end, the front vestibule used and occupied by the motorman, and a general passenger apartment, divided into eight spaces by posts, about two inches thick, on either side, extending from the bottom of the car to and supporting the roof, and

seats extending across the car between the posts. On each side of the car was a running or foot-board extending almost the entire length of the car, and used for the convenience of passengers in their ingress to and egress from the car, and for the convenience of appellant's employes in charge thereof. This foot-board was about seven inches wide and about one foot and ten inches below the floor of the car, and its outer edge about nine inches from the edge of the car floor. When appellee and his companion boarded the car the same was filled with people, some standing between the seats, and the rear vestibule filled by people standing therein, the motorman being the only person occupying the front vestibule. It was customary at the time of appellee's injury, when the cars were crowded, for passengers to stand in the front vestibule and between the seats in the main passenger compartment when such seats were filled, and it would have been possible for appellee to stand between the seats of this car or in the front vestibule. Appellee and his companion boarded the car a little to the rear of the center of the same, and appellee, after looking for a seat, took an erect and upright position directly opposite one of the upright posts and stood on the running-board with his back in the direction the car was moving, and with his right arm around one of such upright posts, his companion assuming a position standing on the running-board, with his left arm around one of the upright posts of the car, the two facing each other, which position they occupied, carrying on a conversation between themselves from the time they boarded the car in the city of Muncie until they reached the bridge, and appellee's head, near his left ear, and his left shoulder and arm came in contact with said iron or steel post, and he was knocked off of the car and injured. Appellant gave no warning of the car's approach to the bridge, nor was any warning given by any one to the knowledge of appellee. It is also found by the jury that appellee could have leaned in and between said upright

posts or stood with his body against and parallel with said car and erect and would have escaped injury. Appellee by reason of said conversation was not unconscious of the general progress, course and location of said car, nor of the ordinary happenings and occurrences in and about the same, and had he been facing the front or watching the general progress, course and direction, and the manner in which the car was running he could have observed the bridge before he was injured; but there was no evidence as to the distance a person of ordinary eyesight could see the bridge before the car entered it. The space between the floor of the car and the structural work of the bridge was thirteen and three-fourths inches, and at the time of the injury the car on which appellee was a passenger was moving at the rate of about twelve miles per hour; and had appellee been standing erect upon said running-board and neither leaning toward nor from the structural work of the bridge he would have come in contact with the iron or steel posts. At that time, and each year for several years prior to the day of this injury, fairs, and occasionally other public entertainments, were held at said fair grounds, and frequently passengers on cars operated on this line, including the one on which appellee was riding, were permitted to and did stand on the running-boards thereof. At the time appellee was injured there were five or six persons on the running-board of the car on which appellee was standing. Appellee had been a resident of the city of Muncie for about ten or twelve years prior to the time of receiving the injury, and knew of the bridge and the general manner of its construction, and knew that in order to reach his destination that evening he would pass over it, having theretofore crossed the bridge in appellant's cars. At the time appellee was injured the car was brilliantly lighted with a number of electric lights and was equipped with a lighted headlight on the front end thereof. Both sides of the car were open and unobstructed, except for

its upright posts, and appellee was the first passenger ever injured by coming in contact with the iron structural work of the bridge. On the evening of the injury a person upon the car observed appellee's position and that he would likely come in contact with the bridge, called to appellee in substantially the following words: "Look out, stranger, the bridge will hit you," but appellee did not hear said warning. Appellee was not warned by the motorman or the conductor of the car's approach to the bridge. Appellee at the time of his injury was thirty-three years old and was earning $12 a week, and on account of his injury was unable to work at his usual occupation for a period of six weeks.

It has been a number of times held by this court, and appellant concedes, that it is not negligence *per se* for a passenger to ride on the running-board of a crowded car propelled by electricity. *Marion St. R. Co.* v. *Shaffer* (1894), 9 Ind. App. 486; *Terre Haute Electric R. Co.* v. *Lauer* (1899), 21 Ind. App. 466; *Citizens St. R. Co.* v. *Hoffbauer* (1900), 23 Ind. App. 614; *Frank Bird Transfer Co.* v. *Morrow* (1905), 36 Ind. App. 305.

But appellant contends that because there was room in the front vestibule of the car upon which appellee was riding, and where he might have been carried in safety, and because of the position he took while standing on the footboard of the car, such facts, as a matter of law, rendered him guilty of contributory negligence, and he should not recover.

In this State contributory negligence is a matter of defense (*Southern Ind. R. Co.* v. *Peyton* [1902], 157 Ind. 690; *City of Evansville* v. *Christy* [1902], 29 Ind. App. 44), and when interposed to defeat an action for personal injury, it is necessarily one of the questions before the jury and answered by their general verdict. This rule obtains in the case at bar, and, the

general verdict being in favor of appellee, it is in effect a finding in his favor and against appellant on that issue. It is also a finding against appellant and in favor of appellee upon every issuable fact necessary to sustain

3.  appellee's cause of action, when sought to be overthrown by "special facts found by the jury in answer to interrogatories propounded to them." It carries to its support every presumption and inference of fact which might have been drawn from the evidence properly admitted under the issues, and will yield only after resolving all reasonable presumptions against such isolated facts and "one or the other is necessarily erroneous." *Albany Land Co.* v. *Rickel* (1904), 162 Ind. 222; *City of South Bend* v. *Turner* (1901), 156 Ind. 418, 54 L. R. A. 396, 83 Am. St. 200; *Union Traction Co.* v. *Barnett* (1903), 31 Ind. App. 467; *Chicago, etc., R. Co.* v. *Stephenson* (1904), 33 Ind. App. 95.

The law as deduced from the great number of decisions cited in the case of *Citizens St. R. Co.* v. *Hoffbauer, supra,* clearly expresses the degree of care and diligence

4.  required of street car companies regarding the safety and protection of its patrons from danger. It also announces the rule that "a passenger has the right to presume, in the absence of knowledge or warning to the contrary, that all necessary precautions have been and will be taken for his safe transportation." From the doctrine declared in that case we have no reason to recede.

It is true, if appellee knowingly exposed himself to danger such as an ordinarily prudent person under the circumstances would not have done, and was

5.  thereby injured, or if by reasonable precaution he could have foreseen the danger and avoided the injury, he ought not to be allowed damages. *City of Evansville* v. *Christy, supra; Aikin* v. *Frankford, etc., R. Co.* (1891), 142 Pa. St. 47, 21 Atl. 781. But these are questions, under our jurisprudence, generally for the jury, the

exceptions being where the exact standard of duty is fixed, or, as said in the case of *Citizens St. R. Co.* v. *Hoffbauer, supra:* "If they find facts which show a failure to attain that standard, the law declares negligence exists. The conduct of the complaining party in such cases is such as to shock the mind of an ordinarily prudent person and shows a plain disregard for common care and caution. In such cases a court may well say that the party's conduct showed a plain and reckless disregard for his own safety. But a court may not declare that negligence does or does not exist in any case simply because the facts are undisputed. But the question is, even though the facts be undisputed, is there room for difference of opinion as to the inferences and conclusions that may be drawn from these undisputed facts? If the inference of negligence, or its absence, necessarily follows from the undisputed facts, it is a question of law; if not, it is for the jury. 'In the ultimate determination of the question,' says Beach, Contrib. Neg. (3d ed.), §452, 'whether the plaintiff was guilty of negligence, two separate inquiries are involved: first, what was ordinary care under the circumstances? and second, did the conduct of the plaintiff come up to that standard? With respect to the standard of ordinary care it may be remarked that it is not always a fixed standard, and in many cases it must first be found by the jury. In such a case each of these inquiries is for the jury. They must assume a standard, and then measure the plaintiff's conduct by that standard.' "

The complaint places the iron posts of the bridge within a few inches of the car as it entered the bridge; the distance as found by the jury being thirteen and three-fourths inches. The complaint avers an insufficient width between the iron posts of the bridge and the cars operated by appellant on that line to permit the passage of passengers standing on the running-boards thereof. The special facts show that appellee might have occupied a position whereby he could have avoided the

collision and injury. There were other persons standing on the running-board with appellee. We must presume they were all there with the knowledge and consent of appellant's employes in charge of the car. They were not warned of the danger attendant by the proximity of the car to the iron posts of the bridge, and we cannot say as a matter of law, over appellee's positive denial, that because he had a general knowledge of the construction of the bridge, and because he had ridden over the bridge in appellant's cars, he was thereby possessed of such knowledge of the danger consequent on his riding on the running-board of the car as would show "a plain disregard for common care and caution," and impute to him such negligence in case of injury as would relieve appellant from giving him warning of the danger of a collision with the bridge posts. Whatever knowledge might be inferred and attributed to him from these facts was a question for the jury, and by them to be considered, together with all the other facts in the case, as affecting the question of contributory negligence. *Indiana, etc., Oil Co. v. O'Brien* (1903), 160 Ind. 266.

From the record it appears that appellee was a man of average size. His position on the car when the collision happened was the same as that assumed by him shortly after taking passage thereon. He paid his fare to the conductor in charge of the car. Nothing was said to him about standing between the seats or in the front vestibule. There is no evidence that appellee knew that passengers were allowed to stand in the front vestibule with the motorman upon occasions when the car was otherwise crowded with passengers. There is no showing that appellee knew the front vestibule was not fully occupied by passengers. It seems that others were on the running-board as well as appellee, a fact which might have been considered by the jury as to whether appellee was acting as a cautious and prudent person in

standing upon the foot-board. The jury found the width of the foot-board, and that appellee was standing in an erect position, and that the side of the car slightly projected out over the foot-board. From these latter facts the inference might follow that the right side of appellee was against the side of the upright post used in sustaining himself on the car. Whether the other persons on the footboard were toward the rear or the front of the car from appellee does not appear, nor does their position on the footboard appear, except as to appellee's companion. The fact that no other passenger was ever injured by coming in contact with the upper structural work of the bridge, during the long use thereof by appellant, was a fact to be considered by the jury, but that fact alone would not relieve appellant from liability, if it maintained its road so as to endanger the lives and limbs of its passengers while riding on that part of its cars so used by its invitation and with its permission, and recognized by the public as a place for the carriage of passengers.

In the case of *Thane* v. *Scranton Traction Co.* (1899), 191 Pa. St. 249, 253, 43 Atl. 136, 71 Am. St. 767, the court, in speaking of the rule applicable to the risk assumed by a passenger on the platform of a car in case of vacant seats inside, and when the car is crowded, held, in the latter case, that a passenger, if admitted upon the car, "must stand on the platform with its rods, etc., to hold by, or inside with a strap for that purpose. He is presented with a choice of evils, and his action must be judged by the jury, while on the other hand the carrier by receiving him undertakes and gives him assurances that it will take care of him and guard him against accident as far as the circumstances permit."

The case of *West Chicago St. R. Co.* v. *Marks* (1899), 82 Ill. App. 185, in many respects, is very similar to the case now under consideration. In that case Marks was a passenger over the company's line crossing Desplaines

street viaduct. He was riding on the foot-board of a car, the seats of which were all occupied, and the aisles, platform and foot-boards were partly filled by people standing. In crossing the viaduct appellee was struck by one of the upright iron posts of the truss and was knocked off of the car and injured. The distance of the car from the projections of the truss was estimated to be from twelve to nineteen inches, and by using extra precautions such as bending the body in toward the body of the car or by standing straight up and close against the side of the car a passenger on the foot-board could pass in safety. Marks claimed not to know of the viaduct's being on that route until he was hit.

The court in passing upon this case, after quoting as follows from *North Chicago St. R. Co.* v. *Williams* (1892), 140 Ill. 275, 29 N. E. 672, "where a railroad company places its tracks so near an obstruction, which it is necessary for its cars to pass, that its passengers, in getting on or off the cars, and while upon them, are in danger of being injured by contact with such obstruction, it is a fair question for the jury, whether the company is, or is not, guilty of negligence. * * * It has been held that it is inexcusable in a railroad company to permit an obstruction to stand so near its track as to render the use of the step or running-board dangerous to life or limb, inasmuch as exceptional cases may arise when it is lawful and proper for even a passenger to use such stepping-board;" said: "Such doctrine must be doubly sound, when, as in this case, the company has, by persistent usage, allowed, and tacitly invited, its passengers to ride upon the foot-boards of its cars in such perilous proximity to dangerous obstructions, without warning of the risk." And upon the question of contributory negligence said: "It was for the jury to say whether appellee had knowledge or notice of the existence of the proximate danger, or ought, under the circumstances, to have had it. We do not say that if the

appellee had known of the viaduct the cars were to cross, *and of the location of the tracks with reference to the truss* [our italics] he would not have been bound to use more than ordinary care to avoid being hit, but we do hold that under the proved facts and circumstances, ordinary care for his own safety was all appellee was required to exercise, and that the verdict has settled that question in his favor, upon evidence that would not have properly warranted any other result." On the question in the case at bar, as to the ownership and maintenance of the bridge by the municipality, the court said: "It was no concern of the jury, so far as this case was concerned, what relationship existed between the city of Chicago and the appellant with reference to the use of the viaduct, nor whether the tracks were laid in the place they occupied by virtue of municipal direction. If as a matter of fact it were negligence for the appellant to lay its tracks so near the truss, and to operate them there without warning to passengers, no arrangement between it and the city concerning the matter would excuse the negligence in an action for damages because of it. *West Chicago St. R. Co.* v. *Annis* [1897], 165 Ill. 475, 46 N. E. 264; *West Chicago St. R. Co.* v. *Annis* [1895], 62 Ill. App. 180."

In *Elliott* v. *Newport St. R. Co.* (1893), 18 R. I. 707, 28 Atl. 338, 31 Atl. 694, 23 L. R. A. 208, it is held that a passenger riding on the running-board of a street car was charged with the duty of protecting himself against the usual and obvious perils to which the public highway is used, but not the danger of being hit by a trolley pole, and the question of negligence is one for the jury.

In *City R. Co.* v. *Lee* (1888), 50 N. J. L. 435, 14 Atl. 883, 7 Am. St. 798, where a foot-board passenger was knocked off the car by colliding with a like passenger on another car going in the opposite direction, the court held that while such injured person was bound to take knowledge of the ordinary uses of the street, he was not presumed

to know that the company's road was constructed or its cars so run as to render a position in which it invites him to ride a dangerous one, and the question of contributory negligence is one for the jury.

In *Dickinson* v. *Port Huron, etc., R. Co.* (1884), 53 Mich. 43, 18 N. W. 553, it is held that the question of contributory negligence, where a passenger, while on the running-board of a car, was injured by colliding with coal bins standing on the track, coming within eleven and one-half inches of the side of the car, and within two inches of the step upon which plaintiff stood, and which could have been seen from the approaching car for a distance of 1,200 feet, had the passenger looked, was for the jury.

Without extending this opinion for the purpose of referring specially to other cases, see the following: *Burns* v. *Bellefontaine R. Co.* (1872), 50 Mo. 139; *Nolan* v. *Brooklyn, etc., R. Co.* (1881), 87 N. Y. 63, 41 Am. Rep. 345; *Cummings* v. *Worcester, etc., St. R. Co.* (1896), 166 Mass. 220, 44 N. E. 126; *Smith* v. *St. Paul City R. Co.* (1884), 32 Minn. 1, 18 N. W. 827, 50 Am. Rep. 550; *Faris* v. *Brooklyn, etc., R. Co.* (1899), 61 N. Y. Supp. 670; *Hassen* v. *Nassau Electric R. Co.* (1898), 53 N. Y. Supp. 1069; *Matz* v. *St. Paul City R. Co.* (1893), 52 Minn. 159, 53 N. W. 1071; *Graham* v. *McNeill* (1899), 20 Wash. 466, 55 Pac. 631, 43 L. R. A. 300, 72 Am. St. 121; *Corlin* v. *West End St. R. Co.* (1891), 154 Mass. 197, 27 N. E. 1000.

From the record now before us it appears that at the time of the injury the night was dark and cloudy and with every appearance of rain. The jury found that had appellee been looking in the direction in which the car was moving he could have seen the bridge before he was injured, but whether in time to change his position and avoid the injury does not appear; but, under the presumption prevailing in favor of the general verdict and against the isolated facts, it may be presumed that he could not. His

companion testified that he was facing toward the bridge, but did not see it until after the collision. We are therefore not convinced that there is such antagonism between the general verdict and the facts as specifically found by the jury as to warrant us in saying that both cannot stand.

II. The second error relied on by appellant is the overruling of its motion for a new trial. What we have said in disposing of the first error in a large measure applies to the first and second subdivisions discussed by appellant under this error, and is against appellant's contention.

The case of *Craighead* v. *Brooklyn City R. Co.* (1890), 123 N. Y. 391, 25 N. E. 387, is not applicable to the case at bar, for the reason that the facts in the two cases are widely different.

Other reasons assigned for a new trial are based upon the ruling of the court in admitting evidence over appellant's objection, tending to prove the amount of 9. money appellee was receiving per day for services at the time of his injury, and that instruction seven, given by the court upon its own motion, authorizing the jury in case they found for appellee to consider in assessing damages "any suffering, loss of time, loss of ability to earn money in his personal vocation at the time of the injury, and any personal derangement or impairment of the plaintiff physically." Appellant contends that this evidence tended to prove, and this instruction permitted the jury to consider, special damages, when under the issues only general damages are allowed.

A witness for plaintiff, on his original examination, was permitted to give evidence as to the kind of work appellee was doing and for whom, at or about the time of receiving the injuries of which he complained. Following this evidence he was asked this question: "Tell the jury what he [Sullivan] was earning per day or month at the time he received these injuries; where he was working, if you know." To this question appellant interposed the follow-

ing objection: "I object to the question because it is not within the issues of the case, but seeks to prove an element of special damages not averred in the complaint. There is no damage claimed for the loss of earning capacity, and for that reason it is incompetent." The trial court overruled this objection, and the witness was permitted to answer as follows: "Well, he was earning $2 a day."

Appellee by his complaint demanded of appellant only such damages as the law implies as resulting from his physical injuries alone, and are what may be termed general damages. There is no claim for special damages such as accrue from loss of time or for any interference with his business, trade, or profession.

In an action for personal injury all damages which actually and proximately result from the wrongful act complained of may be recovered. While this is true, it is the settled law that while the effect of the injury may cause a loss of time or interfere with the business, work, trade or profession of the party injured, resulting in his damage, such damage is to be regarded as special, provable only when specifically averred in the complaint. This latter rule is based upon the theory that the law will not imply from the injury alone the damages peculiar to and resulting in each individual case. *Lindley* v. *Dempsey* (1873), 45 Ind. 246; *Ohio, etc., R. Co.* v. *Selby* (1874), 47 Ind. 471, 497, 17 Am. Rep. 719; *Baldwin* v. *Western R. Corp.* (1855), 70 Mass. 333; *Tomlinson* v. *Town of ·Derby* (1876), 43 Conn. 562; *Krueger* v. *Chicago, etc., R. Co.* (1902), 94 Mo. App. 458, 68 S. W. 220; *Brown* v. *Chicago, etc., R. Co.* (1883), 80 Mo. 457; *Chicago, etc., R. Co.* v. *Emmert* (1897), 53 Neb. 237, 73 N. W. 540, 68 Am. St. 602; *Chicago, etc., R. Co.* v. *Klauber* (1881), 9 Ill. App. 613; ·*Slaughter* v. *Metropolitan St. R. Co.* (1893), 116 Mo. 269, 23 S. W. 760; *Wabash, etc., R. Co.* v. *Friedman* (1893), 146 Ill. 583, 30 N. E. 353, 34 N. E. 1111; *Texas, etc., R. Co.* v. *Buckalew* (1893), 3 Tex. Civ.

App. 272, 22 S. W. 994; *Coontz* v. *Missouri Pac. R. Co.* (1893), 115 Mo. 669, 22 S. W. 572; *Hunter* v. *Stewart* (1859), 47 Me. 419; *Comminge* v. *Stevenson* (1890), 76 Tex. 642, 13 S. W. 556; *Stevenson* v. *Smith* (1865), 28 Cal. 102, 87 Am. Dec. 107; *Hallock* v. *Belcher* (1864), 42 Barb. 199; *Morris* v. *Winchester Repeating Arms Co.* (1901), 73 Conn. 680, 49 Atl. 180.

If appellee was entitled to prove the character of his business, which was that of conditioning race horses, and the amount of time lost on account of his injuries, and follow it up by proof that at the time he was injured he was receiving $2 a day, then on principle we see no reason why he might not, under allegations of a complaint merely describing his injuries, concluding with the general averment of damage, prove any damages, whether general or special, sustained for loss of time in any business, trade or profession, limited only to the test of resulting damages. But this is not the rule, as will be seen from an examination of the authorities last cited.

By instruction seven the jury was told that in assessing appellee's damages it might consider, among other things, "loss of time." The value of the time lost was fixed at $2 per day, and, under the allegations of the complaint, was not a proper element of damages in the case at bar.

Appellant discusses one other cause for a new trial: that the court erred in giving instruction three asked by appellee. As this question may not arise on a second trial we will not consider it.

A new trial should be granted. Judgment reversed, with instructions to the lower court to sustain the motion for a new trial.